66 F.3d 315
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Albert Russell CLAY, Jr., Plaintiff-Appellant,
v.
Frank DREW, Sheriff of Virginia Beach; Major Smith;
Captain Mann; Mr. Rylance, Classification Head;
B.R. Overman, Prior Sheriff, Defendants-Appellees.
 No. 95-6516.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Aug. 15, 1995.
Decided: Sept. 19, 1995.
 
 Albert Russell Clay, Jr., appellant pro se. Conrad Moss Shumadine, John Stephen Wilson, WILLCOX & SAVAGE, Norfolk, VA, for appellees.
 Before WIDENER, HALL, and MURNAGHAN, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Albert Russell Clay appeals from the district court's order entering judgment as a matter of law for Defendants in his 42 U.S.C. Sec. 1983 (1988) action. Clay contends that the district court erred in ordering him to pay for the costs of his transportation to court and erred in conducting a trial of this action in his absence. We affirm.
 
 
 2
 After remand by this court, the district court scheduled trial in Clay's Sec. 1983 action in which he alleged a denial of good time credits while incarcerated at the Virginia Beach Correctional Center ("VBCC") and a denial of access to courts resulting in his loss of bail money, insurance proceeds, and his interest in a boat. The district court directed the Department of Corrections to prepare an itemization of the costs to transport Clay from Greensville Correctional Center in Jarratt, Virginia, to trial in Norfolk, Virginia. The court noted that if Clay, who was proceeding in forma pauperis, is able to show cause why he is unable to pay for his transportation costs, the court would then consider the feasibility of transportation at government expense against the alternatives, such as conducting pretrial conferences at Greensville, conducting the trial on the depositions, or staying the action pending Clay's release from incarceration.
 
 
 3
 The Department of Corrections filed an itemized statement noting that the total cost for transporting Clay to trial would be $184.32. The Department of Corrections also submitted a statement of Clay's inmate account, which reflected that Clay had $34 in his spend account, and he had nearly $500 in deposits in the six months preceding that date.
 
 
 4
 The district court then ordered Clay to show cause why he is unable to pay the cost of his transportation to the court for trial and pretrial conferences. In his reply, Clay argued against the authority of the court to require him to pay for his transportation and asserted that the alternatives to his presence at the trial were not feasible. Clay alleged that his presence was required for the trial and a stay of the case until his release is not feasible because the case had already been delayed. Clay attached an unsworn affidavit from his mother stating that she would pay the cost of transporting Clay to court for pretrial hearings and for the jury trial.
 
 
 5
 The district court overruled Clay's objections to payment of the transportation costs and ordered that he remit $184.32 within twenty days. Clay was subsequently transferred from Greensville Correctional Center to Coffeewood Correctional Center, and the district court amended the transportation order to require payment of $269.28 by February 17, 1995. Clay again moved for a waiver of the transportation costs, noting that his inmate account had changed substantially since the last report and that a new assessment was required. He further stated that his family had not paid the costs and are under no obligation to do so. Clay argued that the cost computation by the Department of Corrections was fraudulent.
 
 
 6
 The district court overruled Clay's objections and on February 27 and February 28, 1995, without Clay being present, the court heard evidence in the case. Clay's deposition was read into the record, and at the close of the evidence, the district court granted Defendants' motion for judgment as a matter of law. Clay appeals, arguing that the judgment is void because the district court had no authority to require him to pay for his own transportation to court.
 
 I.
 
 7
 An incarcerated inmate's right to be present at the trial of his civil action is not absolute. That right is qualified by the "countervailing considerations of expense, security, logistics, and docket control." Muhammad v. Warden, Baltimore City Jail, 849 F.2d 107, 111-12 (4th Cir.1988) (citing Price v. Johnston, 334 U.S. 266, 285-86 (1948)). Although the district court should give first consideration to securing the inmate's presence for trial--at his own expense or at government expense--if that is not feasible, the district court must consider all other reasonably available alternatives to trial with the inmate present. Such alternatives include trial on the depositions, con ducting trial at the place of incarceration, or, if not prejudicial to the parties, staying the case until the inmate's release from prison. Muhammad, 849 F.2d at 113.
 
 
 8
 Although the district court did not go through these factors in Clay's case, we find that requiring Clay to pay the costs of his transportation to the trial was not an abuse of discretion. Clay objected to any alternatives to his presence during the trial and insisted upon transportation at government expense. Any further consideration of alternatives to Clay's presence would have been futile. Further, we find no abuse of discretion in the district court's refusal to transport Clay to court at government expense. See Muhammad, 849 F.2d at 112 (citing Ballard v. Spradley, 557 F.2d 476, 480-81 (5th Cir.1977)).
 
 
 9
 During trial in Clay's absence, the district court sought to protect Clay's interest by having Clay's deposition read into the record. See Peterson v. Nadler, 452 F.2d 754, 756-57 (8th Cir.1971) (trial on deposition preferable to indefinite stay). This was a reasonable and fair alternative to dismissing the case for failure of Clay to prosecute. See Heidelberg v. Hammer, 577 F.2d 429, 431 (7th Cir.1978). In sum, because an incarcerated plaintiff has no right to be present during the trial of his civil action and Clay rejected any alternatives to his presence and stated that his mother would pay the cost, the district court did not abuse its discretion in ordering Clay to pay the cost of his transportation to court and in reading Clay's deposition into the record when Clay failed to appear for trial.
 
 II.
 
 10
 After hearing the evidence, including Clay's deposition testimony, the district court granted judgment for the Defendants as a matter of law.* We review this order de novo. Malone v. Microdyne Corp., 26 F.3d 471, 475 (4th Cir.1994). Clay's first claim was for monetary damages for the improper denial of his good time credits while incarcerated at VBCC. The district court sustained an objection to the admissibility of the entire portion of Clay's deposition which discussed this claim. However, even if the objection were overruled, we find that judgment for Defendants on this issue was proper. Clay admitted that the Department of Corrections, not the Virginia Beach Correctional Center, computed his good time credits. He asserted that the state officials failed to submit his name as one entitled to more credits, but he failed to present any factual support for his claim that he was denied due process. See Carey v. Piphus, 435 U.S. 247, 266 (1978). We find that there was "no legally sufficient evidentiary basis" for a reasonable jury to find in Clay's favor on this claim, Fed.R.Civ.P. 50(a)(1), and that the district court properly granted Defendants' motion for judgment as a matter of law as to this issue.
 
 
 11
 In his remaining claims before the district court Clay alleged that VBCC's inadequate library and the failure of VBCC to provide access to persons trained in the law caused him to lose $5000 in insurance proceeds to which he allegedly was entitled from the theft of business property, an interest in a boat allegedly valued at $5000, and $30,000 in bond money that had been erroneously forfeited because Clay was unaware that he needed to file a motion for remission of bond.
 
 
 12
 Prison officials are required to provide prisoners with adequate access to a law library or to persons trained in the law. Bounds v. Smith, 430 U.S. 817, 828 (1977). To state an Eighth Amendment violation arising from an inadequate library or the lack of access to persons trained in the law, a prisoner must show actual injury or actual prejudice to litigation. Strickler v. Waters, 989 F.2d 1375, 1383-84 (4th Cir.), cert. denied, 62 U.S.L.W. 3319 (U.S.1993).
 
 
 13
 During his deposition, Clay testified that he was incarcerated at VBCC from June 13, 1988, until August 3, 1989. Throughout the time that he was there, he was in constant communications with attorneys--either retained or appointed--and a paralegal. He had court appearances on June 13, 1988, June 20, 1988, July 19, 1988, September 7, 1988, November 16, 1988, April 13, 1989, and July 12, 1989. He testified that he spoke with an attorney, Linda Furman, once a month while he was at VBCC. Furman had represented him during some of these hearings. Clay testified that he requested Furman's assistance on the bail issue, the insurance issue, and the boat issue. She provided some help on these claims, and she mailed him legal materials.
 
 
 14
 Clay testified that he communicated with two attorneys in addition to Furman concerning the bail issue, the insurance issue, and the boat issue, but these attorneys provided no assistance. Also while in VBCC, Clay communicated once a week with Laurie Shelton, a paralegal. Shelton offered to help Clay with cases, including the insurance issue. Clay did not ask for her assistance in the boat theft issue.
 
 
 15
 Clay admitted that he was able to speak with other inmates about his cases and that one man provided assistance by informing him what he needed to file to pursue his bond case and by providing information on completing Sec. 1983 forms. Clay stated, however, that the officials would separate inmates who were discussing legal issues.
 
 
 16
 Clay admitted that his claim for the $30,000 bail money was denied because he lacked standing to recover money that he had not paid. At the time his deposition was taken, Clay had pending an action to recover his $5000 interest in the boat which was allegedly stolen. Clay has failed to show that he was prevented from pursuing any meritorious claim. See Magee v. Waters, 810 F.2d 451, 452-53 (4th Cir.1987). Clay's claim that he would have prevailed had he been able to earlier file an action for recovery of the $5000 insurance proceeds is conclusory and speculative and is insufficient to show actual injury. See Strickler, 989 F.2d at 1383.
 
 
 17
 In conclusion, we affirm the district court's order granting judgment as a matter of law in favor of Defendants. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 
 18
 AFFIRMED.
 
 
 
 *
 A transcript of the trial is not in the record. Because Clay has been granted in forma pauperis status, the government may provide a free transcript if the appeal presents a "substantial question." 28 U.S.C.A. Sec. 753(f) (West 1993). Clay, as the Appellant, bears the burden of demon strating substantiality. Maloney v. E. I. DuPont de Nemours & Co., 396 F.2d 939 (D.C.Cir.1967), cert. denied, 396 U.S. 1030 (1970). However, Clay states that preparation of the transcript is not necessary for resolution of the appeal. He merely argues that the district court erred in conducting the trial in his absence, after refusing his request to be transported at government expense. Because Clay has no absolute right to be present during his civil action, this contention is erroneous. In any event, Clay has failed to present a substantial question warranting preparation of a transcript at government expense